**Joseph F. WHELAN, Jr., Plaintiff,**

v.

**ROYAL CARIBBEAN CRUISES LTD., Defendant.**

**No. 1:12–cv–22481–UU.**

United States District Court, S.D. Florida.

Aug. 15, 2013.

Darla Marie Lobanova, Joseph J. Rinaldi, Jr., Brill Rinaldi Garcia, Coral Gables, FL, Juan Manuel Garcia, Jr., Brill Rinaldi Garcia, Miami, FL, David Wayne Brill, Brill Rinaldi Garcia, The Law Firm, Weston, FL, for Plaintiff.

David James Horr, Nicholas Allen Applin, Horr Novak & Skipp, P.A., Miami, FL, for Defendant.

### THIRD ORDER ON MOTIONS IN LIMINE

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion to Exclude Opinion Testimony of Plaintiff's Medical Expert Dr. Douglas Faller, D.E. 72, and Plaintiff's Motion to Exclude the Report and Testimony of Defendant's Expert Pulmonologist, D.E. 58.

THE COURT has reviewed the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises.

### LEGAL STANDARD

 Federal Rule of Evidence 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Supreme Court has set forth the criteria for the admissibility of expert

testimony under Rule 702 by instructing trial judges to "determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue," which includes "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and or whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This standard is applicable to all expert testimony: *"Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ The U.S. Court of Appeals for the Eleventh Circuit has established a three-part conjunctive test to determine whether expert testimony should be admitted under *Daubert:*

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir.2005). The party seeking to introduce expert testimony bears the burden of satisfying these criteria by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999).

■ With respect to the qualification of an expert, courts must recognize that "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). To determine whether a witness is qualified to testify as an expert regarding the matters he intends to address, a witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact. *See, e.g., Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir.2001) (finding—in a civil RICO claim involving fraudulent real estate transactions—that a witness with "a Ph.D. in economics, extensive experience as a professional economist, and a substantial background in estimating damages" was qualified as an expert witness in assessing the loss suffered by the plaintiff even though he had no real estate development experience).

■ Even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his expert opinion must be sufficiently reliable under *Daubert* and its progeny. *See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir.2003) (stating that "one may be considered an expert but still offer unreliable testimony"). If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Frazier*, 387 F.3d at 1261 (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.)). Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate

validation—i.e., 'good grounds,' based on what is known." *Id.* (quoting *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786).

The final requirement for admissibility of expert testimony is that it "assist the trier of fact." *Frazier,* 387 F.3d at 1244. In other words, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citing *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985)). Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys.,* 50 F.3d 908, 917 (11th Cir.1995) (citations omitted).

### DISCUSSION

#### A. Dr. Reed

Plaintiff seeks to exclude Defendant's expert pulmonologist, Dr. Barry A. Reed, on the grounds that the process he used in forming his expert opinion is not sufficiently reliable under the *Daubert* standard for Rule 702. Dr. Reed concluded that Decedent most likely died as a result of sudden cardiac arrest caused by any of several factors or a combination thereof—most of which relate to cardiac disease. D.E. 58–1. Plaintiff objects to the reliability of Dr. Reed's methodology for two reasons: (1) although Dr. Reed appropriately employed differential etiology he fails to correctly apply that methodology by failing to arrive at a conclusion as to a single cause of death; and (2) Dr. Reed, according to Plaintiff, "resorts back to the statistics of likely causes of death in the overall population with little connection to or juxtaposition with the actual, individual patient." D.E. 58, at 5. Plaintiff's Motion must be denied.

Plaintiff's first objection to Dr. Reed's medical opinion is both legally and factually flawed. Differential etiology "need not rule out all possible alternative causes," but "must at least consider other factors that could have been the sole cause of the plaintiff's injury." *Guinn v. AstraZeneca Pharms. LP,* 602 F.3d 1245, 1253 (11th Cir.2010). If an expert need not rule out *all* possible alternative causes, it follows that he need not decide on one cause in particular to the exclusion of all others. And, on a more fundamental level, the focus of a *Daubert* inquiry "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 584–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court finds unexceptional Dr. Reed's conclusion that Decedent suffered cardiac arrest resulting from a constellation of cardiac-related risk factors recorded in her medical records.

Plaintiff's objection as to Dr. Reed's use of statistics is factually incorrect. Dr. Reed does not defer to the cited statistics to reach his conclusion. Rather, he uses the statistics as part of his consideration of the likelihood that Decedent's death was caused by a pulmonary embolus brought on by trauma to her right arm. In any event, the Court notes that there is nothing inherently unreliable in an expert's use of statistical data, either as part of his methodology or in the application of his methodology to the facts of a given case. As Dr. Reed himself explained at deposition, "reasonable medical probability is after all a statistical statement." D.E. 82–1, at 29:1–2. Rule 702 allows the possibility of an expert's reliance on his own experience in analyzing the facts of a case—it would be ironic to permit reliance of statistically insignificant data but to disallow reliance on figures whose calculations can be tested.

#### B. Dr. Faller

Defendant moves to exclude the testimony of Plaintiff's expert hematologist, Dr.

Douglas Faller, on the grounds that his reasoning is unreliable and inadmissible under the *Daubert* standard for Rule 702. While Defendant does not object to the methodology used, it argues that his conclusion that the cause of death was a pulmonary embolism under one part of his methodology is not "reasonably supported by record evidence" because Dr. Faller relies heavily on the testimony of the Decedent's husband regarding the Decedent's medical condition in the days leading to her death. D.E. 72, at 10. Defendant also attacks Dr. Faller's opinion insofar as he relates back Decedent's pulmonary embolism to her fracture aboard Defendant's ship; Defendant argues that, as a legal matter, "an opinion based on a temporal relationship is not a reliable methodology" under *Daubert*. *Id.* at 12 (citing *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1343 (11th Cir.2010)). These arguments do not amount to much at all, and the Motion must be denied.

■ Dr. Faller's methodology in this case, as carefully detailed in his expert report, D.E. 72–2, is the commonly used "pretest probability" assessment, which contains an "implicit criteria" prong and an "explicit criteria" prong (also known as the "Wells decision rule"). *Id.* at 9–10. Dr. Faller identified immobilization as one of the risk factors for pulmonary embolism in his implicit criteria assessment, and subsequently incorporated his understanding of Decedent's lack of activity after her fracture as a weighted factor in determining a Wells score. After eliminating the presence of other risk factors, Dr. Faller concludes that the Decedent expired as a result of a pulmonary embolism that most likely was provoked, in part, by lack of activity while Decedent convalesced.

While it is true that Dr. Faller's conclusions depend, to some degree, upon what he has gleaned from the evidentiary record regarding Decedent's risk factors for pulmonary embolism, including her medical status in the days preceding her death, his reliance on patient history testimony does not render his testimony unreliable pursuant to *Daubert*. Physicians routinely rely on such information to make differential diagnoses and to form opinions as to causation. *See* Fed. Jud. Ctr., *Reference Manual on Scientific Evidence* 704–05,- 715–716 (3d ed.2011). If Defendant believes that Dr. Fuller placed undue weight on patient history in arriving at his conclusions, Defendant is free to cross-examine Dr. Fuller on this point and attempt to persuade the jury that his opinion should be rejected for this reason. Accordingly it is

ORDERED AND ADJUDGED that Plaintiff's Motion, D.E. 58, is DENIED. It is further

ORDERED AND ADJUDGED that Defendant's Motion, D.E. 72, is DENIED.