RESTANI, Judge:
The Federal Deposit Insurance Corporation (“FDIC”), as receiver for First Priority Bank (“the Bank”), brought claims alleging legal malpractice and breach of fiduciary duty against Defendants Robert E. Messick and Icard, Merrill, Cullis, Timm, Furen & Ginsburg, PA. (collectively, “Icard Merrill”) arising from Icard Merrill’s representation of the Bank in closing a $5.3 million loan to River Meadows Development, LLC (“River Meadows”). The FDIC alleged that absent Icard Merrill’s negligence and breach of fiduciary duty, the Bank would not have made the loan, which subsequently went into default and was sold for approximately $700,000. A jury returned a verdict in favor of the FDIC in the amount of $1,149,051.09. Icard Merrill appeals the district court’s denial of their motion for judgment as a matter of law, arguing that there was insufficient proof that their acts or omissions proximately caused the Bank’s damages. We agree that there was insufficient evidence of causation and reverse.

BACKGROUND

Messick, a partner at Icard, Merrill, Cullis, Timm, Furen & Ginsburg, PA., was hired by the Bank to close a $5.3 million loan to River Meadows. The loan was to be used to fund predevelopment costs of a housing project and to pay off an existing mortgage on one of the parcels of land to be developed for the project. The project was to be completed in two stages. The first stage (“Phase I”) involved the development of three parcels of land totaling approximately 22 acres. The second stage involved the development of two additional parcels of land, one of which was a 25-acre waterfront property (“the waterfront parcel”).
Icard Merrill had assisted River Meadows’ managing member, Mark Brivik, in obtaining four of the five parcels intended to be used as part of the project. They were unable, however, to acquire the wa *855 terfront parcel. Although Brivik sought an option to purchase the waterfront parcel, he was able to secure only a right of first refusal.
Icard Merril had also represented U.S. Funding, which held the mortgage to be paid off. The last extension of this mortgage was due to expire shortly before the loan from the Bank to River Meadows was executed.
The Chief Lending Officer at the Bank, Steve Putnam, drafted a preliminary Credit-Approval Report (“CAR”) to present to the Bank’s loan committee, which had the authority to approve or deny the loan. The CAR included as collateral the assignment of an option to purchase the waterfront parcel and priced the option as “TBD” (shorthand for “to be determined”). The summary and collateral analysis sections of the CAR, however, did not mention the assignment of an option. The CAR also included as collateral a mortgage on the Phase I parcels and assignment of all plans, permits, and contracts related to the Phase I parcels. The Phase I parcels were appraised at $8,339,000 collectively. The CAR additionally indicated that the guarantors on the loan (the individual investors in River Meadows) had a combined liquidity of $7.3 million. The preliminary CAR was sent to Icard Merrill and Icard Merrill drafted the loan commitment letter based on the CAR.
The loan was approved by the loan committee on February 16, 2006. The unsigned minutes of the committee meeting did not indicate any waiver of the requirement that an option to purchase the waterfront property be included as collateral.
The Bank and River Meadows subsequently executed the loan commitment letter, but the letter failed to include as collateral an assignment of an option to purchase the waterfront parcel. The resultant loan documents likewise did not require the assignment of an option. The loan closed on March 22, 2006. Icard Merrill represented both the Bank and River Meadows at the closing.
The loan went into default in August 2007. The Bank attempted to foreclose and filed a collection action against the • guarantors. The guarantors asserted that Icard Merrü’s conflicts of interest relieved them from liability on the loan. The difficulties in collecting hindered the Bank in its attempt to sell the loan package and “quite a bit” of the loan was written off by the Bank. The Bank failed during the foreclosure action. The FDIC was appointed as receiver of the Bank and ultimately sold the loan package for $693,720.
The FDIC filed suit in December 2011. The complaint alleged legal malpractice and breach of fiduciary duty for failing to obtain as collateral the assignment of an option to purchase the waterfront parcel, failing to obtain a written waiver of the requirement that the option be included as collateral, and failing to disclose that the purported option contract was actually a fight of first refusal. The complaint also alleged breach of fiduciary duty for failing to advise the Bank of Icard Merrill’s conflicts of interest. A jury found in favor of the FDIC on both counts. The district court subsequently denied Icard Merrill’s renewed motion for judgment as a matter of law. Icard Merrill appeals.

JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 12 U.S.C. § 1819(b)(2) and 28 U.S.C. § 1331. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court’s ruling on a motion for judgment as a matter of law de novo. Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 723 (11th Cir.2012). “Under *856 Rule 50, a court should render judgment as a matter of law when ... there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party.” Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted). The court reviews “all the evidence, drawing all reasonable inferences in favor of the nonmoving party.” Hubbard, 688 F.3d at 724.

DISCUSSION

Icard Merrill contends that there was insufficient evidence to support the jury’s causation finding. To prove causation under Florida law,
a plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Guinn v. AstraZeneca Pharms. LP, 602 F.3d 1245, 1256 (11th Cir.2010) (quoting Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984)); see also USA Interactive v. Dow Lohnes & Albertson, P.L.L.C., 328 F.Supp.2d 1294, 1308, 1313 & n. 42 (M.D.Fla.2004) (applying this standard to both legal malpractice and breach of fiduciary duty claims). Icard Merrill argues that the FDIC failed to present sufficient evidence for a reasonable jury to find that Icard Merrill’s negligence or breach of fiduciary duty caused the Bank to enter into a loan that the Bank otherwise would not have made. We agree.
. I. Negligence Claim
The evidence relied upon by the FDIC to support its negligence claim generally shows that the Bank approved the loan with the understanding that the assignment of an option to purchase the waterfront parcel would be included as collateral. Specifically, the FDIC makes much of the fact that Icard Merrill failed to follow the CAR’s instruction that an option to purchase the waterfront property be included as collateral. But this does not address the ultimate issue of whether the Bank would have approved the loan if it had known that River Meadows had only a limited right of first refusal.
The best evidence in support of the FDIC’s negligence claim is that option contracts have some value as collateral and that the waterfront parcel was a unique piece of land that was important to the development project contemplated by River Meadows. But there is no way to gauge the importance of the purported option contract to the Bank, because no evidence was presented as to any of the terms of the purported option. Although evidence presented at trial suggested that the waterfront property might have been worth between $6 million and $8.3 million, there was no evidence indicating the price to be paid to exercise the purported option, or even how long River Meadows had to exercise that option. An option to pay $7 million for property worth $6 million, for example, would be of less value and importance to the Bank than an option to purchase the same property for $5 million. Without knowing the terms of the purported option or hearing evidence that the option at some price on this parcel was crucial to the Bank’s decision, the jury was required to speculate as to how the Bank would have responded upon learning that River Meadows had only a limited right of first refusal.
*857 Nor can any inference favoring the FDIC be drawn regarding the importance of the option contract based on the other collateral for the loan. The loan appeared to be adequately secured, regardless of whether there was an option to purchase the waterfront property or only a limited right of first refusal. Even without the assignment of the option contract, the $5.3 million loan was secured by mortgages on the Phase I parcels, which were valued at over $8.3 million, and the guarantors combined had $7.3 million in liquid assets. The FDIC’s banking expert even testified that he was “not here to quibble” with the Bank’s decision to approve the loan if it received as collateral only the assignment of a right of first refusal on the waterfront property. And the FDIC failed to present a single Bank employee to testify that the loan would not have been made had the Bank known that River Meadows had only a limited right of first refusal. Thus, any inference that the option contract was a key part of the loan based on the inadequacy of the other security for the loan would be unsupported by the record.
In sum, nothing in the record suggests that an option to purchase the waterfront property was so important to the Bank that it more likely than not would have declined River Meadows’ loan request once the Bank learned that the option to purchase was actually a limited right of first refusal. That the Bank might have acted differently is insufficient. The district court’s denial of Icard Merrill’s motion for judgment as a matter of law on the negligence claim therefore is reversed.
II. Breach of Fiduciary Duty Claim,
Regarding the breach of fiduciary duty claim, the FDIC argues that “a reasonable jury could infer that Messick and the Icard’s [sic] failure to notify the Bank of the lack of an option contract or their extensive conflicts of interest, with all their ramifications, proximately caused the Bank’s loss.” As explained above, any finding that the Bank would have acted differently had it known that River Meadows had a limited right of first refusal instead of an option contract was based on speculation. As explained below, the evidence regarding Icard Merrill’s failure to counsel the Bank regarding Icard Merrill’s conflicts of interest also is insufficient to support a finding that Icard Merrill’s breach of fiduciary duty caused the Bank to enter into a loan it otherwise would not have made.
The FDIC elicited testimony from the Bank’s former Chairman of the Board, Alan Zirkelbach, and the Bank’s former President, George Najmy, that the guarantors were an important consideration in making the loan and that when the Bank tried to collect from the guarantors following default, the guarantors resisted paying on the basis of Icard Merrill’s conflicts of interest. Lawrence Fox, the FDIC’s legal expert, also explained that an attorney has a duty to explain to his client the potential risks of proceeding with a lawyer operating under a conflict of interest. Absent, however, are any details about the specific defense(s) asserted by the guarantors, any testimony establishing what exactly Icard Merrill should have told the Bank before going forward with the representation, and any evidence suggesting what the Bank would have done once it had been counseled properly.
The jury was asked to assume that Icard Merrill should have warned the Bank that Icard Merrill’s conflicts of interest might present a bar to collecting from the guarantors and that the Bank would have walked away from the loan. But there is not enough evidence in the record to make this conclusion without engaging in speculation. There is no evidence show *858 ing that this particular issue should have been foreseen by Icard Merrill (which is not surprising given that there was no evidence regarding the specifics of the defense), that the risk to the Bank of the guarantors potentially raising such a claim was high at the time the Bank made the loan, or that the defense raised by the guarantors was likely to be successful. Nor is there any testimony that the Bank would have decided not to make the loan had it been properly counseled. The $5.3 million loan was still secured by mortgages on property valued at approximately $8.3 million, which resulted in a loan to value ratio of 63.5 percent. The Bank’s policies allowed it to make loans with a loan to value ratio of 65 percent or less, and thus this loan still would have been permitted under the Bank’s policies.
On these facts, any finding that Icard Merrill’s breach of fiduciary duty caused the Bank to enter into a loan it otherwise would not have made was based on speculation. Therefore, we reverse the district court’s denial of Icard Merrill’s motion for judgment as a matter of law on the breach of fiduciary duty claim as well.

CONCLUSION

“A mere possibility” that the defendant’s acts or omissions caused the plaintiffs harm “is not enough.” Guinn, 602 F.3d at 1256. Because the evidence presented at trial established nothing more than a possibility that the Bank would have rejected River Meadows’ loan request, the district court’s denial of Icard Merrill’s renewed motion for judgment as a matter of law is
REVERSED.