[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15065
Non-Argument Calendar

_____

D.C. Docket No. 8:17-cv-00990-JDW-AEP


JOHN MCCASLAND,

Plaintiff-Appellant,

versus

PRO GUARD COATINGS, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 23, 2020)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

In this products-liability lawsuit, John McCasland contends that he suffered permanent injuries from using "Liquid Roof," a product manufactured and sold by Pro Guard Coatings, Inc. ("Pro Guard"). From 2010 to 2013, McCasland used Liquid Roof as intended, and in compliance with all safety instructions, to repair aging or damaged roofs for his work as a Recreational Vehicle restoration specialist. He began to suffer mysterious health problems in 2012, first presenting with an arrhythmia. In 2013, he began to experience unexplained and involuntary movements of his tongue and mouth, which worsened over time despite medical treatment. Then, in 2014, a physician diagnosed the involuntary movements as oromandibular dystonia, which McCasland was told was likely permanent. McCasland then filed a counseled lawsuit alleging that Pro Guard was liable in negligence or strict liability for failing to adequately warn of the risks posed by Liquid Roof.

After discovery, the district court granted summary judgment to Pro Guard. Summary judgment was appropriate, according to the court, because McCasland offered no evidence from which a reasonable jury could find, within a reasonable degree of medical certainty, that Liquid Roof was capable of causing and did in fact cause his medical conditions. Specifically, the court found that McCasland was required, but failed, to present expert testimony to establish that causal connection. McCasland now appeals.

2

We review *de novo* the district court's grant of summary judgment and apply the same standard used by the district court. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276 (11th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a summary-judgment motion, "all evidence and factual inferences reasonably drawn from the evidence" are viewed "in the light most favorable to the non-moving party"—here, McCasland. *Burton*, 271 F.3d at 1277. "But while all reasonable inferences must be drawn in favor of the nonmoving party, an inference based on speculation and conjecture is not reasonable." *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019) (quotation marks omitted).

In diversity cases, federal courts apply the substantive law of the state in which the case arose—here, Florida. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132–33 (11th Cir. 2010). Under Florida Law, a claim for failure to warn, whether in negligence or strict liability, requires a plaintiff to show "(1) that the product warning was inadequate; (2) that the inadequacy proximately caused her injury; and (3) that she in fact suffered an injury from using the product." *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017). This appeal concerns the third element only.

3

To prove causation in a toxic-tort case, a plaintiff generally must show both "general causation" and "specific causation." *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005). General causation refers to "whether the drug or chemical *can* cause the harm plaintiff alleges." *Id.* Specific causation refers to "whether the plaintiff has demonstrated that the substance actually caused injury in her particular case." *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1248 n.1 (11th Cir. 2010). To show general causation, the plaintiff may offer proof that "the medical community recognizes that the agent causes the type of harm a plaintiff alleges." *McClain*, 401 F.3d at 1239. But even where the medical community generally recognizes that the agent causes the type of harm a plaintiff alleges, the plaintiff still must offer proof that the agent was a substantial factor in causing the plaintiff's injuries. *See id.*; *Guinn*, 602 F.3d at 1256 (describing Florida's "substantial factor" test for proving causation).

Moreover, in cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1316 (11th Cir. 2014) (stating that, to prove a product caused the plaintiff's injury, the plaintiff was "*required* to have *Daubert*-qualified, general and specific-causation-expert testimony that would be admissible at trial to avoid summary judgment" (emphasis in original)); *McClain*, 401 F.3d at 1237 (proving that the toxicity of an

agent caused the plaintiff's injuries "requires expert testimony"); *Shepard v. Barnard*, 949 So. 2d 232, 233 (Fla. Dist. Ct. App. 2007) (approving trial court's grant of summary judgment against plaintiff after excluding plaintiff's medical experts' testimony, because the doctors were needed "to provide opinions regarding any causal link between the alleged injury and the medical treatment"). Expert testimony was required in this case because the question whether Liquid Roof can and did cause the harm McCasland alleges "concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).

Here, the district court properly granted summary judgment to Pro Guard because McCasland failed to create a genuine issue of a material fact regarding causation. *Guinn*, 602 F.3d at 1256. To be sure, McCasland produced some evidence that Liquid Roof was hazardous. Specifically, his sole expert, Dr. Justin White, a biochemist, opined that Liquid Roof was "particular[ly] hazardous" based on an analysis of its component chemicals. McCasland also points to the warning label on the product, which advised that it "[m]ay affect the brain or nervous systems causing dizziness, headache, or nausea," and that "[r]eports have associated repeated and prolonged occupational overexposure to solvents with permanent brain and nervous system damage." But, even so, McCasland's evidence fails to show that Liquid Roof,

5

even if it's generally hazardous and can cause nervous system damage, is capable of causing the particular condition—oromandibular dystonia—of which he complains.

More importantly, McCasland failed to offer any expert testimony to establish specific causation—that Liquid Roof did in fact cause his medical condition. Dr. White admitted in his deposition that it was outside of his training to provide an opinion regarding causation for a condition and that he would not be providing an opinion regarding the cause of McCasland's condition. Additionally, McCasland's physicians offered no opinion as to what caused his oromandibular dystonia or other symptoms. Because the record contains no expert testimony of specific causation, the district court properly granted summary judgment. *See Chapman*, 766 F.3d at 1316 (stating that the plaintiffs "were *required* to have *Daubert*-qualified, general and specific-causation-expert testimony that would be admissible at trial to avoid summary judgment"); *Guinn*, 602 F.3d at 1256 (granting summary judgment in the absence of expert testimony as to specific causation); *McClain*, 401 F.3d at 1237 (stating that proving causation in a toxic tort case "requires expert testimony").

In his *pro se* brief on appeal, which we liberally construe, *see Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008), McCasland argues that a reasonable jury could find a causal nexus as a matter of logical reasoning. He points out that he developed medical problems only after using Liquid Roof and breathing its fumes regularly and that his symptoms matched the symptoms described on the product's

warning label.  We do not doubt the symptoms McCasland describes or his sincere belief that his exposure to Liquid Roof caused his health problems.  But his lay opinion on the matter is not sufficient to withstand summary judgment because the question whether Liquid Roof caused his injuries is a matter "beyond the understanding of the average lay person."  *Frazier*, 387 F.3d at 1262.  On this record, too much speculation is required for a jury to conclude that Liquid Roof more likely than not was a substantial factor in causing the McCasland's injuries.  *See McClain*, 401 F.3d at 1239; *Hinson*, 927 F.3d at 1115 ("[A]n inference based on speculation and conjecture is not reasonable.").  And while McCasland states that he has engaged in extensive research on the issue, we see no indication that he could meet the requirements to qualify as an expert witness.  *See* Fed. R. Evid. 702.

McCasland compares this case to cases brought against tobacco companies and argues that, in light of that comparison, his proof should be considered sufficient to withstand summary judgment.  But there is at least one key difference:  in tobacco cases, "the medical community generally recognizes the toxicity of the drug or chemical at issue."  *McClain*, 401 F.3d at 1239 (stating that "cigarette smoke . . . causes cancer").  This case, by contrast, is one "in which the medical community does not generally recognize the agent as both toxic and causing the injury plaintiff alleges."  *Id.*  As a result, McCasland needed to offer more by way of proof of causation.  *See id.*

Finally, we are unpersuaded by McCasland's claim that the district court violated his right to trial by jury. "It is beyond question that a district court may grant summary judgment where the material facts concerning a claim cannot reasonably be disputed." *Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1190 (11th Cir. 2004). And even though granting summary judgment "prevents the parties from having a jury rule upon those facts, there is no need to go forward with a jury trial when the pertinent facts are obvious and indisputable from the record; the only remaining truly debatable matters are legal questions that a court is competent to address." *Id.* Thus, the grant of summary judgment—based on a determination that there are no genuine issues of fact for a jury to resolve—does not violate a plaintiff's Seventh Amendment right to a jury trial. *See id.* Because we agree with the district court that there are no genuine issues of material fact, McCasland's right to a jury trial was not violated.

For these reasons, the district court did not err in granting summary judgment to Pro Guard. Accordingly, we affirm.

**AFFIRMED.**