[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17061
_____

D.C. Docket No. 1:15-cv-21960-MGC


HAROLD CRANE,

Plaintiff - Appellant,

versus

LIFEMARK HOSPITALS, INC.,
LIFEMARK HOSPITALS OF FLORIDA, INC.,
d.b.a. PALMETTO GENERAL HOSPITAL,

Defendants - Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 2, 2018)

Before ED CARNES, Chief Judge, MARCUS, Circuit Judge, and ROSS,[*] District
Judge.

---

[*] The Honorable Eleanor L. Ross, United States District Judge for the Northern District of
Georgia, sitting by designation.

ROSS, District Judge:

Plaintiff Harold Crane, who is deaf, brought this action against Defendants Lifemark Hospitals of Florida, Inc., d/b/a Palmetto General Hospital ("PGH"), and its parent organization, Lifemark Hospitals, Inc., for their alleged failure to provide an American Sign Language ("ASL") interpreter for Crane to effectively communicate during an involuntary commitment evaluation. Specifically, Crane alleges the defendants violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "RA") and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA"). The district court granted the defendants' motion for summary judgment.

At issue in this appeal is whether Crane was afforded an equal opportunity, through an appropriate auxiliary aid, to effectively communicate medically relevant information during his involuntary commitment evaluation. After a thorough de novo review, and viewing the facts in the light most favorable to Crane as the non-moving party, we reverse the district court's grant of summary judgment in favor of the defendants. Specifically, genuine issues of material fact exist as to whether Crane was able to effectively communicate medically relevant information and whether the hospital personnel were deliberately indifferent.

## BACKGROUND

Crane is profoundly deaf and suffers from chronic depressive and anxiety disorders.  On July 17, 2011, the Miami-Dade Police Department responded to a call that Crane was suicidal and transported Crane to PGH for an involuntary commitment examination pursuant to the Baker Act, Fla. Stat. § 394.451, *et seq.*[1] During a Baker Act evaluation, a health care provider merely determines whether the patient is a danger to himself or others and does not engage in complex mental health treatment or diagnosis.

Upon arrival at PGH, Crane was treated for alcohol related issues, including suspected consumption of rubbing alcohol.  The next day, July 18, 2011, Crane was admitted to the hospital for medical reasons stemming from his alcohol intoxication.  Dr. Marjorie Caro evaluated Crane on July 18, 2011, pursuant to the Baker Act, and she determined Crane was not a threat to himself or others.  During this Baker Act evaluation, Dr. Caro communicated with Crane through written

---

[1] The Baker Act allows an authorized person, such as a police officer, to initiate an involuntary examination of an individual whom the officer believes may have a mental illness, is substantially likely to cause serious bodily harm to himself or others, and refuses a voluntary examination or is unable to understand the need for an examination.  Fla. Stat. § 394.463.  The Baker Act receiving facility, where the involuntary examination takes place, has 72 hours within which to determine whether to release the individual into the community, admit him voluntarily for psychiatric care, or petition a court to commit him involuntarily for psychiatric care.  Id.

notes and through her basic sign language skills.[2]  On July 19, 2011, Crane

remained in the hospital.

On July 20, 2011, an ASL interpreter was present for the first time during

Crane's hospital stay to assist Dr. Caro in communicating with Crane.  Dr. Caro

discharged Crane from PGH later that day.[3]  Crane contends he repeatedly asked

for a sign language interpreter throughout his entire hospital stay.

## PROCEDURAL HISTORY

Crane filed this lawsuit against the defendants seeking monetary damages

and injunctive relief pursuant to the RA and injunctive relief pursuant to the ADA.

Specifically, Crane alleged that defendants violated the RA and ADA when they

did not provide him with an ASL interpreter during his hospital stay, and thus,

failed to ensure effective communication.  The defendants filed a motion for

summary judgment in the district court, arguing they did not violate the RA or

ADA because they provided Crane with sufficient auxiliary aids for effective

communication.

The district court granted summary judgment for the defendants, finding,

*inter alia*, (1) there was no genuine issue of material fact that the defendants' use

---

[2] Dr. Caro testified that she learned basic sign language skills in order to communicate with her developmentally disabled daughter who was nonverbal for five years.  She used these basic sign language skills with her daughter and also when Dr. Caro was unable to speak for a period of nine months because of a medical condition.
[3] Upon release from PGH, Crane resumed drinking alcohol and was admitted into another hospital that same evening.

of written notes and basic sign language interpretation was ineffective communication, and (2) there was no genuine issue of material fact that the hospital personnel were deliberately indifferent.

Crane timely appealed the district court's grant of summary judgment, arguing the district court incorrectly determined there was no genuine issue of material fact as to effective communication and deliberate indifference.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo; therefore, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor. Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 831 n.4 (11th Cir. 2017) (citing Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 341-42 (11th Cir. 2012)). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## DISCUSSION

Section 504 of the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

5

assistance . . . ."  29 U.S.C. § 794(a).  Title III of the ADA prohibits public

accommodations, including privately operated hospitals, from discriminating

against individuals on the basis of disability in the full and equal enjoyment of

goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C.

§§ 12181(7)(f), 12182(a).

> ADA and RA claims are governed by the same substantive
> standard of liability.  See, e.g., Cash v. Smith, 231 F.3d 1301, 1305
> (11th Cir. 2000). To prevail, a disabled person must prove that he or
> she was excluded from participation in or denied the benefits of the
> hospital's services, programs, or activities, or otherwise was
> discriminated against on account of her disability.  Shotz v. Cates, 256
> F.3d 1077, 1079 (11th Cir. 2001).  Such exclusion, denial, or
> discrimination occurs when a hospital fails to provide "appropriate
> auxiliary aids and services" to a deaf patient, or a patient's deaf
> companion, "where *necessary* to ensure *effective communication*."  28
> C.F.R. § 36.303(c)(1).

Silva, 856 F.3d at 830-31 (emphasis in original).

As we have previously held, the Court's standard inquiry under the ADA

and RA is

> simply to examine whether the hospital provided the kind of auxiliary
> aid necessary to ensure that a deaf patient was not impaired in
> exchanging medically relevant information with hospital staff. To be
> ineffective communication, it is sufficient if the patient experiences a
> real hindrance, because of [his] disability, which affects [his] ability to
> exchange material medical information with [his] health care
> providers. This standard is consistent with the requirement that
> hospitals afford a *level of communication* to a deaf patient about
> medically relevant information that is substantially equal to that
> afforded to non-disabled patients.

Id. at 835 (emphasis in original).

"[P]roving the failure to provide a means of effective communication, on its own, permits only injunctive relief.  To recover monetary damages, a disabled person must further show that the hospital was deliberately indifferent to her federally protected rights."  Id. at 831 (internal citations omitted).

After reviewing the record in the light most favorable to Crane, we hold that summary judgment was improper as to both effective communication and deliberate indifference.  As to effective communication, the district court did not correctly evaluate whether the defendants' alleged failure to offer an appropriate auxiliary aid impaired Crane's "ability to *exchange medically relevant information* with" Dr. Caro.  Id. (emphasis in original).  Instead, the district court improperly determined that Dr. Caro's medical record notes sufficiently showed that the defendants met their duty pursuant to the Baker Act to conduct an evaluation of Crane, and thus, improperly concluded that there was effective communication.  However, the focus of the Court's inquiry, as clarified by Silva, is not whether the medical personnel met the basic requirements of the Baker Act or the medical personnel's ultimate decisions, but instead, is on Crane's equal opportunity to communicate medically relevant information to hospital staff.

"[T]he task of determining whether an entity subject to the RA has provided appropriate auxiliary aids where necessary is inherently fact-intensive [and] [i]t is precisely because of this fact-intensive inquiry that an effective-communication

7

claim often presents questions of fact precluding summary judgment." Id. at 836

(internal citation omitted).  Applying that standard here and viewing the evidence

in the light most favorable to Crane, a jury could find that Crane was not able to

exchange medically relevant information as a hearing patient would have been.

Specifically, Crane declared in an affidavit that

> I was never able to thoroughly express my feelings [about] the
> traumas I have experienced in my life . . . during any of the doctor's
> evaluations and daily interactions with the Hospital's nurses.  For
> example[,] besides writing down that I was depressed, I was never
> provided the opportunity during my hospitalization to go into detail[]
> with the Hospital's staff, nurses, and doctors about why I was
> depressed.  I was only ever able to write down that those were the
> issues that bothered me but was never able to go into detail and
> thoroughly explain my feelings with regard[] to each of the traumas I
> have experienced.

[Doc. 67-5 at ¶ 14].  Additionally, Dr. Caro's notes from her July 20, 2011

evaluation state

> [w]e have been spending time trying to explain to him first by writing
> and communication going back and forth explaining the situation of
> the Baker Act.  Since he was not able to understand the whole
> process, we were able to get an interpreter with [the] name of
> Stacy[. She] was very helpful to communicate with him.

[Doc. 57-13 at 15].  At a bare minimum, this provides evidence that Crane could

not understand and suffered a real hindrance due to his disability to provide

material medical information with his health care provider.  Thus, a genuine issue

of material fact exists as to the question of whether there was effective

communication.  Therefore, we conclude that Crane's claims are suitable for a

8

finder of fact.  We reverse the district court's order granting summary judgment to the defendants on the issue of effective communication and remand for further proceedings.

Turning now to the issue of deliberate indifference, in order to prove deliberate indifference, the disabled person must establish "that the [h]ospital's failure to provide appropriate auxiliary aids was the result of intentional discrimination."  Liese, 701 F.3d at 344 (emphasis omitted).  Put differently, "a plaintiff must show that the defendant 'knew that harm to a federally protected right was substantially likely' and 'failed to act on that likelihood.'"  McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1147 (11th Cir 2014) (emphasis omitted) (quoting Liese, 701 F.3d at 344).  Thus, to establish his claim for a violation of the RA entitling him to damages, Crane must show ineffective communication done with knowledge that it was substantially likely to occur.

The district court found the defendants were not deliberately indifferent because the defendants effectively communicated with Crane, no evidence existed that the hospital staff "disrespected" Crane or his impairment, and the hospital had a "comprehensive policy on auxiliary aids and services, on which all staff was trained."  [Doc. 99 at 8].  However, in Dr. Caro's July 20 report, she wrote that Crane "was not able to understand the whole [Baker Act] process" using written

notes and that "he had difficulty in expressing himself."[4]  [Doc. 57-13 at 15].

While Dr. Caro's notes also say that the interpreter "was very helpful to

communicate with him," Crane testified that Dr. Caro and the hospital staff did not

use an interpreter to explain the Baker Act process, his diagnosis, his medication,

or his treatment options, and that the only thing the interpreter communicated was

that he was being discharged.  [Docs. 57-13 at 15, 67-2 at 57, 64].  We are required

to credit Crane's testimony as the non-movant over Dr. Caro's notes.  Feliciano v.

City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013).

Reviewing the record in the light most favorable to Crane as the non-

movant, Crane has presented sufficient evidence of deliberate indifference to

withstand summary judgment.  Consequently, we reverse and remand for

consideration of the issue of deliberate indifference as well.

## CONCLUSION

We REVERSE the district court's order granting summary judgment to the

defendants on the issues of effective communication and deliberate indifference

and REMAND for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[4] In her deposition, Dr. Caro also stated that after her initial assessment she believed Crane "would benefit if somebody [came] and explain[ed] a little bit better the discharge, the medication, the treatment choices" and that an interpreter would have helped with that explanation and helped Crane, "if he ha[d] any other questions[,] to express himself."  [Doc. 95-1 at 70-71].