[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12386
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-21803-KMW

CHEYLLA SILVA, JOHN PAUL JEBIAN,

Plaintiffs - Appellants,

versus

BAPTIST HEALTH SOUTH FLORIDA, INC.,
BAPTIST HOSPITAL OF MIAMI, INC.,
SOUTH MIAMI HOSPITAL, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 3, 2020)

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Cheylla Silva and John Paul Jebian (collectively, "Plaintiffs") sued two hospitals, Baptist Hospital of Miami, Inc., and South Miami Hospital, Inc., and their parent organization, Baptist Health South Florida, Inc. (collectively, "Baptist"), for monetary damages and injunctive and declaratory relief under the Rehabilitation Act ("RA"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182. Plaintiffs, who are deaf, alleged that Baptist discriminated against them on the basis of disability by failing to provide appropriate auxiliary aids necessary to ensure effective communication with hospital staff. The district court granted summary judgment to Baptist on Plaintiffs' claims for monetary relief, concluding that they could not prove the necessary element of deliberate indifference. Then, after a bench trial, the court found that Plaintiffs lacked Article III standing to obtain injunctive or declaratory relief because, in light of new policies implemented by Baptist, they could not show a likelihood of future injury at Baptist's hospitals. After careful review, we affirm the district court's standing ruling, but we vacate the grant of summary judgment on the claims for monetary relief and remand for further proceedings.

## I. BACKGROUND

Plaintiffs Silva and Jebian are deaf and communicate primarily in American Sign Language ("ASL"). In May 2014, they sued Baptist for violating their rights under the RA and ADA by failing to provide appropriate auxiliary aids necessary to

2

ensure effective communication with hospital staff.  They sought monetary damages and declaratory and injunctive relief.

Plaintiffs alleged that they visited Baptist's hospitals on numerous occasions from 2009 to 2014 as patients or as a patient companion.  While they requested live on-site ASL interpreters for most visits, the hospital relied primarily on an alternative communication method called Video Remote Interpreting ("VRI").  With this internet-connected machine, a live ASL interpreter is located remotely and communicates with the doctor and patient through a portable screen located in the hospital.  Plaintiffs alleged that the VRI machines routinely did not work, and hospital staff would instead rely on family-member companions for interpretive assistance or exchange hand-written notes.  Sometimes, after a VRI breakdown, an ASL interpreter would be called to assist with communication in person.

The district court granted summary judgment to Baptist.  The court found that Plaintiffs lacked Article III standing for injunctive relief and that they had not shown a genuine dispute as to any material fact regarding a violation of the RA and ADA.  The court concluded that the denial of the requested auxiliary aids did not result in any adverse medical consequences or inhibit their communication of the "chief medical complaint" or "instructions under the treatment plan."

Plaintiffs appealed, and we vacated and remanded for further proceedings.  *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir. 2017).  First, we

3

held that the court "erroneously denied prospective injunctive relief on the basis of Article III standing, concluding in error that Plaintiffs did not show they were likely enough to return to the hospitals in the future or otherwise to suffer discrimination again at those facilities." *Id.* "[G]iven Plaintiffs' numerous visits to Defendants' facilities and the wealth of evidence showing repeated VRI malfunctions," we reasoned that there was "good reason to believe" that the VRI malfunctions "will continue to happen at Defendants' facilities when Plaintiffs do return," which was enough to establish standing for injunctive relief. *Id.* at 832–33.

Second, we found that the district court applied an incorrect standard for Plaintiffs' effective-communication claims. *Id.* at 833–35. We explained that Plaintiffs did not need to establish an adverse consequence resulting from an inability to communicate effectively. *Id.* Rather, the focus is on "the equal opportunity to *participate* in obtaining and utilizing services." *Id.* at 834 (emphasis in original). Therefore, the proper inquiry is "whether the hospital provided the kind of auxiliary aid necessary to ensure that a deaf patient was not impaired in exchanging medically relevant information with hospital staff." *Id.* at 835. Ineffective communication occurs, we stated, "if the patient experiences a real hindrance, because of her disability, which affects her ability to exchange material medical information with her health care providers." *Id.*

4

We noted, however, that this standard "does not mean that deaf patients are entitled to an on-site interpreter every time they ask for it." *Id.* "If effective communication under the circumstances is achievable with something less than an on-site interpreter, then the hospital is well within its ADA and RA obligations to rely on other alternatives." *Id.* at 836. We stated that this inquiry is "inherently fact-intensive" and, as a result, "an effective-communication claim often presents questions of fact precluding summary judgment." *Id.*

Applying the proper standard, we concluded that a reasonable jury could find that Baptist's failure to offer appropriate auxiliary aids impaired Plaintiffs' ability to exchange medically relevant information with hospital staff. *Id.* at 836–40. But we did not go further and address whether Plaintiffs had proved Baptist's deliberate indifference, which was necessary to win monetary relief, because the district court had not addressed that issue. *Id.* at 841.

On remand, the parties filed supplemental summary-judgment briefing regarding the issue of deliberate indifference. After holding a hearing, the district court entered an order granting summary judgment on that issue to Baptist. The court found no evidence that Baptist was "actually aware of any instance in which [hospital staff] communicated ineffectively with Plaintiffs." The court noted that hospital staff attempted to provide alternative aids when they did not obtain a live interpreter or working VRI machine, that there was no evidence that Plaintiffs "ever

complained to or informed Defendants that they were not receiving proper assistance" at the time of treatment, and that the mere fact that the VRI machines malfunctioned on occasion was not sufficient to establish deliberate indifference. Thus, the court entered partial summary judgment on Plaintiffs' claims for monetary damages.

The district court then held a bench trial in November 2018 on Plaintiffs' claims for declaratory and injunctive relief. At trial, Baptist presented evidence that beginning in 2014 or 2015, it revised its policies to require the provision of live in-person interpreters upon request by a patient or guest, to provide VRI while waiting for a live interpreter, and to schedule live interpreters for scheduled appointments. Baptist's witnesses testified that these policies had been consistently implemented since they were adopted. Based on this new evidence, the district court concluded that, at the time of trial in November 2018, Plaintiffs lacked Article III standing for injunctive or declaratory relief because there was no evidence that they would suffer future discrimination if they returned to Baptist's hospitals. So the court dismissed their claims for injunctive or declaratory relief for lack of standing, and Plaintiffs timely appealed.

## II. STANDARDS OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party.

*Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1133–34 (11th Cir. 2018). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a district court dismisses a claim for lack of standing, we review the court's legal conclusions *de novo* and its factual findings for clear error. *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1141 (11th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) ("[W]e review the district court's legal conclusions *de novo*, including the court's conclusion concerning standing.").

## III.  DISCUSSION

Claims under the RA and ADA are "governed by the same substantive standard of liability." *Silva*, 856 F.3d at 830. "To prevail, a disabled person must prove that he or she was excluded from participation in or denied the benefits of the hospital's services, programs, or activities, or otherwise was discriminated against on account of her disability." *Id.* at 831; *see* 42 U.S.C. § 12182(a); 29 U.S.C. § 794(a). Under this standard, a hospital violates the RA and ADA when it "fails to provide 'appropriate auxiliary aids and services' to a deaf patient, or a patient's deaf companion, 'where necessary to ensure effective communication.'" *Silva*, 856 F.3d at 831 (quoting 28 C.F.R. § 36.303(c)(1)).

Deaf patients are not "entitled to an on-site interpreter every time they ask for it," however. *Id.* at 835. "If effective communication under the circumstances is achievable with something less than an on-site interpreter, then the hospital is well within its ADA and RA obligations to rely on other alternatives." *Id.* at 836. Whether a particular aid is effective "largely depends on context, including, principally, the nature, significance, and complexity of treatment." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012).

A deaf plaintiff may be entitled to injunctive relief upon a showing that the hospital failed to provide a means of effective communication. *Silva*, 856 F.3d at 831. But "[t]o recover monetary damages, a disabled person must further show that the hospital was deliberately indifferent to her federally protected rights." *Id.*

We have already concluded that a reasonable jury could find that Baptist's failure to offer appropriate auxiliary aids impaired Plaintiffs' ability to exchange medically relevant information with hospital staff. *Id.* at 836–40. The questions before us now are (1) whether that past failure was the result of "deliberate indifference," such that Plaintiffs can recover monetary damages, and (2) whether Plaintiffs are likely to experience ineffective communication in future visits.

## A.  Deliberate Indifference

We begin with the issue of deliberate indifference. In this context, deliberate indifference occurs "when the defendant knew that harm to a federally protected

8

right was substantially likely and . . . failed to act on that likelihood." *Liese*, 701 F.3d at 344 (quotation marks omitted). "[D]eliberate indifference requires that the indifference be a deliberate choice, which is an exacting standard." *Id.* (citation and quotation marks omitted). Negligence alone is not enough. *Id.* In other words, the plaintiff "must show ineffective communication done with knowledge that it was substantially likely to occur." *Crane*, 898 F.3d at 1135.

Here, we find that there is sufficient evidence for a reasonable jury to conclude that Baptist was deliberately indifferent to Plaintiffs' federal rights.[1] Plaintiffs requested an in-person interpreter during most of their visits to Baptist's hospitals, putting hospital staff on notice that they required an interpretive aid. Despite these requests, the hospitals relied primarily on VRI; ordinarily a live, in-person interpreter would be called to help only when VRI proved ineffective or inadequate.

While the choice to rely primarily on VRI instead of in-person interpreters alone does not establish deliberate indifference, *Liese*, 701 F.3d at 343 ("[T]he simple failure to provide an interpreter on request is not necessarily deliberately indifferent to an individual's rights under the RA."), the plaintiffs presented substantial evidence that the VRI machines routinely failed to facilitate effective

---

[1] We review the district court's grant of summary judgment on the issue of deliberate indifference based on the summary-judgment record as it existed at the time of the district court's decision. We do not consider the evidence subsequently produced at the bench trial on Plaintiffs' claims of injunctive relief.

communication. *See Silva*, 856 F.3d at 836–40. Sometimes the VRI picture would be choppy, unclear, or would cut out, and sometimes the VRI machine failed to operate at all. *See id.* In *Silva*, we described how the malfunctioning of the VRI machines "could generate a reasonable inference of an impaired informational exchange" that was likely to occur each time Plaintiffs visited Baptist's hospitals. *Id.* at 837, 832.

Given that Plaintiffs "routinely" experienced these VRI malfunctions at Baptist's hospitals over a period of several years, a jury could reasonably infer that hospital staff knew that the continued reliance on VRI as an interpretive aid, without correcting its deficiencies, was "substantially likely" to result in the impaired informational exchange experienced by Plaintiffs. *See Crane*, 898 F.3d at 1135; *Silva*, 856 F.3d at 840 (noting that Jebian, in tending to decline the use of VRI at Baptist's hospitals, "acted reasonably in anticipating that the VRI would not facilitate effective communication"). A jury could thus conclude that Plaintiffs experienced instances of ineffective communication as a result of a "deliberate choice" by Baptist officials, rather than mere negligence. *See Liese*, 701 F.3d at 344.

## B. Standing

Next, we consider whether Plaintiffs Silva and Jebian have standing to obtain prospective injunctive relief. "To satisfy the injury-in-fact requirement for constitutional standing, a plaintiff seeking injunctive relief in relation to future

10

conduct must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Silva*, 856 F.3d at 832 (quotation marks omitted). The threat of future injury must be real and immediate, not merely conjectural or hypothetical. *Id.* "To establish such a threat, each patient must show that (1) there is a real and immediate likelihood that he or she will return to the facility and (2) he or she will likely experience a denial of benefits or discrimination upon their return." *Id.* (quotation marks omitted). The district court found that the first element was met but the second was not.

Plaintiffs make two main arguments in support of their contention that the district court erred in dismissing their injunctive relief claims for lack of standing. First, they contend that the district court violated the mandate rule and the doctrine of law of the case in finding that they lacked standing. Second, they assert that the court was required to determine whether Baptist's policies rendered their claims moot, not whether the policies deprived them of standing.[2]

*1. The doctrine of law of the case does not apply*

Plaintiffs first argue that our holding in *Silva* that the plaintiffs "have Article III standing to proceed with their claims for injunctive relief," *Silva*, 856 F.3d at 833,

---

[2] The plaintiffs also assert that a court "must first determine whether there has been a violation of the statute[s]" before assessing whether injunctive relief is appropriate. But standing under Article III is a "threshold matter required for a claim to be considered by the federal courts." *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006).

is binding in this appeal under the doctrine of law of the case and that the district court violated our mandate by concluding otherwise.  We disagree.

"The mandate rule is a specific application of the 'law of the case' doctrine[,] which provides that subsequent courts are bound by any findings of fact or conclusions of law made by the court of appeals in a prior appeal of the same case." *Friedman v. Market St. Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008) (quotation marks omitted).  A trial court may not alter, amend, or act contrary to the mandate of an appellate court regarding issues that were "decided expressly or by necessary implication."  *Id.* (quotation marks omitted).  However, "the law of the case doctrine does not apply to bar reconsideration of an issue when (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."  *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984) (quotation marks omitted).

Here, the first exception to the law-of-the-case doctrine applies.  The district court was required to assess Plaintiffs' standing at the time of trial in November 2018.  *See United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir.), *cert. denied*, 140 S. Ct. 526 (2019) ("To have a case or controversy, a litigant must establish that he has standing, which must exist throughout all stages of litigation." (quotation marks omitted)).  And at trial, Baptist presented new evidence regarding its hospitals'

12

policies beginning in 2014 or 2015.  This evidence was not part of the summary-judgment record when we decided *Silva* in May 2017, and it showed that Baptist implemented policies mandating live in-person ASL interpreters upon request.  So at the time of trial, there was new evidence that Baptist offered live in-person ASL interpreters upon request, which Plaintiffs' counsel admitted was more generous than what federal law demanded.

Law of the case does not apply in this situation because the district court based its standing decision on a different record than did this Court when addressing the propriety of summary judgment.  *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1237 n.1 (11th Cir. 2001) ("Law of the case does not apply in this situation because [the later district judge] based his post-trial order on a different record than did [the earlier district judge] when addressing summary judgment.").  "The first exception to the doctrine recognizes that the law of the case is the law made on a given set of facts, not law yet to be made on different facts." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005).  Our decision in *Silva* said nothing, either expressly or by necessary implication, about whether Plaintiffs established standing based on the trial record, which was substantially different than the summary-judgment record we considered in *Silva*.  So, neither law of the case nor the mandate rule applies.  *See Wheeler*, 746 F.2d at 1440.

13

To the extent Plaintiffs suggest it was inappropriate for the district court to rely on Baptist's new evidence, we disagree. "The request for declaratory and injunctive relief ha[d] to be assessed in light of the revised [Baptist] policies that were in place at the time of trial." *J.W. ex rel. Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1267 (11th Cir. 2018). While Plaintiffs hint at improper motives behind Baptist's failure to produce this evidence earlier, they fail to provide any legal reason why the court could not have relied on it.

*2. The district court did not err by failing to address mootness*

Plaintiffs maintain that, because Baptist adopted new policies after the allegedly discriminatory actions, the district court was required to determine whether such policies rendered their claims moot. And they contend that this case is not moot for a variety of reasons. But their arguments miss the mark.

The Supreme Court has often remarked that "the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotation marks omitted). But this description "is not comprehensive." *Id.* Standing and mootness, though they both arise from Article III's case-or-controversy requirement, are "distinct doctrines that must not be confused." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173,

14

1189 n.16 (11th Cir. 2007). And there will be "circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth*, 528 U.S. at 190; *see Sheely*, 505 F.3d at 1182 n.10 ("Even though a case is not moot, that does not mean that injunctive relief follows automatically; undoubtedly, injunctive relief requires something more than the mere possibility which serves to keep the case alive." (quotation marks omitted)).

Here, the district court did not err by failing to consider mootness. Plaintiffs were required to establish their standing to seek prospective injunctive relief based on "evidence adduced at trial." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (quotation marks omitted); *see Amodeo*, 916 F.3d at 971 ("To have a case or controversy, a litigant must establish that he has standing, which must exist throughout all stages of litigation."). Baptist's revised policies, which were in place at the time of trial, were relevant to the inquiry. Therefore, the likelihood of future injury to Plaintiffs—specifically the likelihood they will experience a denial of benefits or discrimination upon their return to Baptist's hospitals—"ha[d] to be assessed in light of the revised [Baptist] policies that were in place at the time of trial." *J.W.*, 904 F.3d at 1267; *see id.* at 1267–69 (holding that, in light of revised policies that were adopted before trial, the plaintiffs failed to establish a likelihood of future injury sufficient to provide standing to obtain declaratory and injunctive

relief). Because standing and mootness are distinct doctrines, and even assuming Baptist's revised policies did not moot the case, the district court was permitted to conclude that Plaintiffs did not have standing to obtain prospective injunctive relief. *See Friends of the Earth*, 528 U.S. at 190; *Sheely*, 505 F.3d at 1182 n.10.

### 3. The district court properly concluded that Plaintiffs lacked standing

Plaintiffs do not directly challenge the district court's findings of fact and conclusions of law regarding their standing to obtain declaratory or injunctive relief. As a result, apart from the arguments we have discussed and rejected above, Plaintiffs have abandoned any challenge to the grounds offered by the district court for its standing determination. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (explaining that issues not plainly and prominently raised on appeal are deemed abandoned). "[I]t follows that the judgment is due to be affirmed." *Id.*

In any event, the district court did not err in finding that Plaintiffs failed to prove a real and immediate, as opposed to merely conjectural or hypothetical, threat of future injury at Baptist's hospitals. *See Silva*, 856 F.3d at 832. Even assuming Plaintiffs established that there was a real and immediate likelihood that they will return to Baptist's hospitals, the court's finding that they will not "likely experience a denial of benefits or discrimination upon their return" is well supported by the trial record. *Id.* (quotation marks omitted).

16

In particular, the district court did not clearly err in finding that, at least since 2015, Baptist had implemented policies at its hospitals that mandated providing live, in-person ASL interpreters upon a patient's or a guest's request. *See McCullum*, 768 F.3d at 1141. In making that finding, the court credited the testimony of multiple witnesses for Baptist, who described these policies during a November 2018 bench trial. According to these witnesses, hospital staff did not have discretion to deny such a request, the hospitals would arrange for an interpreter to be present for scheduled appointments at the time of the appointment, and hospital staff would no longer rely on friends or family for interpretation purposes. In addition, the court found that Plaintiffs had not offered any evidence to contradict Baptist's witnesses on these points, such as evidence of ineffective communication during their visits since the implementation of the new policies in 2014 and 2015. Likewise on appeal, Plaintiffs do not identify any evidence to contradict the district court's findings.

Based on the district court's well-supported findings, it is not likely that Plaintiffs will "experience a denial of benefits or discrimination upon their return" to Baptist's hospitals. *Silva*, 856 F.3d at 832 (quotation marks omitted). So they have not established a real and immediate threat of future injury. *Id.* The court therefore properly dismissed their claims for injunctive relief for lack of standing.

## IV. CONCLUSION

17

In sum, we vacate the district court's grant of summary judgment on Plaintiffs' claims for monetary relief, concluding that they have presented sufficient evidence of deliberate indifference. We affirm the court's dismissal for lack of standing on their claims for prospective declaratory and injunctive relief.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**